CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

September 17, 2025

LAURA A. AUSTIN, CLERK
BY:  s/J.Vasquez
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **RA'QUAN ROBINSON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:24CV00053 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CORRECTIONAL OFFICER** | ) | JUDGE JAMES P. JONES |
| **M. LYONS, ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Ra'Quan Robinson, Pro Se Plaintiff; Timothy E. Davis, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, CRIMINAL JUSTICE AND PUBLIC SAFETY DIVISION, Richmond, Virginia, for Defendants.*

The plaintiff, an unrepresented Virginia inmate, filed this civil rights case under 42 U.S.C. § 1983, alleging that the defendants retaliated against him or denied him due process in related disciplinary proceedings. After review of the record, I conclude that the defendants' Motion for Summary Judgment must be granted in part and denied in part.

## I. BACKGROUND.

Robinson's claims arose while he was confined at River North Correctional Center (RNCC), operated by the Virginia Department of Corrections (VDOC). The defendants are: Correctional Officer M. Lyons, Disciplinary Hearing Officer (DHO) West, and DHO King.

Starting in February 2023, Robinson served as an inmate worker in the kitchen at RNCC, where Officer Lyons was also assigned to work.[1]  On July 27, 2023, between 10:00 a.m. and noon, Robinson was serving lunch trays to general population inmates on Line 2.  Kitchen Supervisor Fendar was standing next to him. Lyons approached them from behind and grabbed Fendar "on the butt."  Am. Compl. 4, Dkt. No. 9.  Feeling uncomfortable with Lyons' action, Robinson backed away. Lyons asked the inmate if he was scared, and Robinson answered, "Yes!"  *Id.*  Lyons "continued to grab on" Fendar's butt.  *Id.*  Robinson claims this incident was an "example of the re-occuring" acts of harassment from Lyons.  *Id.*  Afraid to speak out about the harassment, Robinson tried unsuccessfully to switch shifts to be away from Lyons.

On August 1, 2023, Robinson was distributing breakfast meal trays to general population inmates with the help of Inmate Crewe and Supervisor Martinez.  At approximately 6:40 a.m., after serving the inmates from one housing area, Robinson and Crewe sat down while waiting for the inmates from the next housing area to arrive for their meals.  Robinson states that such mini breaks are a routine practice when there is no work to be done, and kitchen staff have voiced no objection to such

---

[1]  This summary of the allegations in Robinson's verified Amended Complaint and exhibits, and his two verified Declarations and attached documentation, Dkt. Nos. 9–9-12 and 46–46-2, is stated in the light most favorable to him, as is appropriate on summary judgment.

breaks.[2]  At about 6:50 a.m., as Robinson sat on the handle of a cart, Lyons came up behind him and kicked the cart.  Martinez nodded to Robinson, indicating that Lyons wanted his attention.  Martinez told Lyons that Robinson "wasn't doing nothing but buffing the pole." *Id.* at 5.  Robinson stood up and told Martinez, "You can't be saying stuff like that around Dude (Lyons) because he will take your words and make some crazy out them." *Id.*  Robinson said to Lyons "every time you come around me you saying something Gay or Doing something Gay." *Id.* at 6.  Lyons said, "Is you insinuating that I'm Gay?" *Id.*  Robinson referenced Lyons' grabbing Fendar's butt the previous week and asked, "What straight man does that?" *Id.*  Lyons stated, "I didn't grab on Fendar['s] butt, I had something in my hand sticking it up Fendar['s] butt." *Id.*  Robinson said, "Exactly, what straight man does that?" *Id.* "Lyons got angry and started to threaten" Robinson and then walked away. *Id*. Martinez warned Robinson to keep his mouth closed, because Lyons would "get rid of the best workers for lesser." *Id.*

Later that morning, another supervisor told Robinson to be careful, because he was on Lyons' "shit list." *Id.* at 7.  At 7:50 a.m., Robinson told Officer Davis

---

[2]   In later submissions, Robinson states that on August 1, 2023, the kitchen supervisors did not order him to stop sitting and get to work.  He explains that if he had been refusing to work, they would have had him removed from the kitchen area.  He asserts that he was never made aware that sitting down during kitchen duty violated any rule or policy and complains that the defendants did not provide any document stating that sitting was an actionable offense.

that he was in imminent danger and needed to be removed from the kitchen.  Davis asked why, Robinson asked to speak to a superior officer about the issue, and Davis refused.

At about 8:10 a.m., after the breakfast service was completed, Robinson left the kitchen, notified Sergeant Coley that he was in imminent danger, and asked to be removed from the kitchen.  When Coley questioned how Robinson's life was in danger, the inmate demanded to see an investigator.  Coley escorted Robinson to see Intel Officer Lowe.  Robinson told Lowe about "the incident that occur[r]ed with" Lyons on July 27, 2023.  *Id.* at 8.  Lowe authorized Robinson to return to his housing unit so he could report to PREA, referring to a procedure created under the Prison Rape Elimination Act.  Coley told Robinson that his kitchen job would be fine, and he could move to another shift to avoid working around Lyons.  Lowe and Coley left, and Robinson believed they were returning to the kitchen to inform Lyons about Robinson's "protected conduct."  *Id.* at 8.  At 9:09, Robinson called PREA about sexual harassment by Lyons, including Lyons' actions with Fendar a week before.  Br.  Opp'n Summ. J. Mot. Decl. Ex. B, at 5, Dkt. No. 46-2.

On August 1, 2023, at approximately 8:45 a.m., Lyons issued a Disciplinary Offense Report (DOR) charging Robinson with offense code 200, Refusing to work.  The file time listed on the DOR was "approximately 20 mins [sic] after Sgt. Coley

and intel officer Lowe informed Defendant Lyons about Robinson protected

conduct." Am. Compl. 9, Dkt. No. 9. The DOR offense conduct section read:

> At approximately 6:55 a.m. I officer Lyons was making rounds in
> kitchen when I was walking towards line 2 I noticed Inmate Robinson
> sitting on the cart handle I officer Lyons then ask Inmate Robinson to
> get off the cart he stated he was resting. I then observed Inmate
> Robinson sitting down 2 more times after this. This is not the first time
> I have spoken to Inmate Robinson about this issue. Inmate Robinson
> also stated that if I didn't stop harassing him about sitting down he
> would call PREA on me.[3] Therefor[e] charge is being written per
> 861.1.

Am. Compl. Ex. B1, Dkt. No. 9-2. Coley served the DOR on Robinson at 3:28 p.m.

that afternoon. At 3:45 p.m., Robinson "called PREA to report the retaliation." Am.

Compl. 9, Dkt. No. 9.

Robinson states that on the morning he made his PREA report, he did not yet

know Lyons was writing him a termination slip or a disciplinary charge for sitting

down or refusing to work. During the PREA investigation, Fendar made a statement:

"I have never had any form of sexual contact with Mr. Lyons and there is no sexual

harassment either. Mr. Lyons has slapped my leg in a playful ma[nn]er before but

in no way was it sexual." Decl. Ex. E, at 18, Dkt. No. 46-2. The PREA investigators

determined that Lyons' alleged conduct did not meet the PREA definition of sexual

harassment, so Robinson's complaint was ruled non-PREA.

---

[3] Robinson states that Lyons told him to stand up, and he did so. In a later filing,
Robinson denies that he threatened "Lyons with PREA." Br. Opp'n Summ. J. Mot. Decl.
8, Dkt. No. 46-1.

In preparation for the disciplinary hearing, DHO King reviewed Robinson's requests for evidence. On August 3, 2023, he denied the inmate's requests for video footage and a copy of the PREA report as irrelevant or unavailable. Robinson claims King falsified documents by stating that some requested footage was unavailable; that footage did exist and Robinson was later permitted to view it as part of discovery in this lawsuit. DHO King also ruled as irrelevant a letter Robinson wrote, claiming that Lyons wrote the charge to retaliate against him for reporting to the investigator on August 1, 2023, about Lyons' behavior with Fendar on July 27, 2023.

On August 15, 2023, DHO West conducted the hearing on the disciplinary charge. Before starting the audio recording, West asked Robinson "was he going to take the charge?, because she seen him on camera sitting." Am. Compl. 10, Dkt. No. 9. Robinson said, "No! because I didn't do anything wrong, other inmates was sitting down too, this is clearly retaliation." *Id.* The audio recording indicates that Robinson had a staff advisor, pleaded not guilty, and told West that Lyons had charged him to retaliate against him and treated him differently than other inmates who also sat down at work. Robinson contends that West "talked over" him as he tried to present his defense. *Id.* West deemed Robinson's retaliation argument irrelevant because his PREA report was deemed non-PREA. She found Robinson guilty based on his admission that he had been sitting down at work and sanctioned

him with loss of commissary and telephone privileges for fifteen days. West's findings were upheld on appeal.

On August 17, 2023, Robinson placed himself in the Restricted Housing Unit (RHU) for his own protection, fearing further retaliation. He states that he suffered "mentally from retaliatory tactics that was encourage and influenced by" Lyons. *Id.* at 11. RHU staff, allegedly carrying out retaliation suggested to them by Lyons, refused Robinson recreation, refused him access to a bathroom during recreation (causing him to soil himself), tampered with his mail, and repeatedly shook down his cell. On October 20, 2023, Robinson removed himself from RHU.

The disciplinary charge Lyons wrote made Robinson ineligible for a transfer to a Level 3 prison. During his October 2023 annual review, his request for a transfer was denied. The ineligibility decision was overturned on appeal. When Robinson filed a grievance about Lyons' actions, officials responded that his grievance was resolveable, because an internal investigation of the retaliation allegation was still in progress.

I liberally construe Robinson's Amended Complaint as asserting the following claims, related to events in August through October of 2023 at RNCC:

1.    Lyons retaliated against Robinson by bringing a disciplinary charge against him, terminating him from his job, and influencing conditions in RHU, in violation of the First Amendment; and

    2.      King and West denied Robinson due process during disciplinary proceedings, in violation of the Fourteenth Amendment.

The defendants, through counsel, have filed an Answer and a Motion for Summary Judgment, supported by affidavits by Lyons, King, and West, with attached documentation. Robinson has responded with verified declarations and other documents, making the matter ripe for consideration.

## II. DISCUSSION.

### A.

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To preclude summary judgment, a nonmovant must present a "genuine" dispute as to a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court's summary judgment inquiry is whether the evidence, taken in the light most favorable to the nonmoving party, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).[4] The court "may not weigh the evidence or make credibility

---

[4] I have omitted internal quotation marks, alterations, or citations here and throughout this Opinion, unless otherwise noted.

determinations." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019).  The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992).

"[C]ourts are obligated to liberally construe pro se complaints, however inartfully pleaded*."  Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017).  A pro se litigant's verified complaint or other verified submissions must be considered as affidavits and may defeat a motion for summary judgment "when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021).

## B.

Lyons' affidavit offered in support of summary judgment repeats the events of August 1, 2023, as described in the DOR quoted above.  Lyons states that when he brought the disciplinary charge against Robinson, he did not know the inmate had filed a PREA report against Lyons.  He contends that Robinson's complaints or grievances about him were not a factor in his decision to charge Robinson with disciplinary offense code 200 on August 1, 2023, and declares that he would have made the same decisions in interacting with Robinson, regardless of any grievances or complaints the inmate may have filed or made against him.  Lyons denies making any sexual remarks or advances toward Robinson or any other inmate.  Lyons also

denies urging staff in RHU to refuse Robinson recreation or bathroom access or to
tamper with his mail.

## C.

An official action motivated by retaliation for the plaintiff's exercise of a
constitutionally protected right can violate the First Amendment, even if the act,
when taken for a different reason, might have been legitimate. *Mt. Healthy City Sch.
Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283 (1977). However, merely conclusory
allegations of retaliation cannot suffice to state any constitutional violation
actionable claim under § 1983. *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). In
addition, courts must treat an inmate's claim of retaliation by prison officials "with
skepticism because [e]very act of discipline by prison officials is by definition
retaliatory in the sense that it responds directly to prisoner misconduct." *Cochran v.
Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). To succeed on a § 1983 retaliation
claim, a plaintiff "must allege that (1) he engaged in protected First Amendment
activity, (2) the defendant took some action that adversely affected [the plaintiff's]
First Amendment rights, and (3) there was a causal relationship between [the
plaintiff's] protected activity and the defendant's conduct." *Martin v. Duffy*, 977
F.3d 294, 299 (4th Cir. 2020) (quoting *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir.
2017)).

To meet the first element of the retaliation analysis, a plaintiff must show that he exercised his First Amendment rights. Prison officials may not retaliate against an inmate for making or filing a grievance. *Booker*, 855 F.3d at 541 (finding that inmates have "First Amendment right to be free from retaliation for filing grievances").

The second, adverse action element of the retaliation standard is objective. Specifically, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). The filing of a false disciplinary action against a prisoner can satisfy the second element of a retaliation claim. Likewise, courts have held that loss of a prison job can qualify as an adverse action. *Gregg-El v. Doe*, 746 F. App'x 274, 275 (4th Cir. 2019) (unpublished) (concluding that "the denial of an institutional job can chill a reasonable person's exercise of First Amendment rights.").

The third element of the standard requires the plaintiff to show a causal connection between his First Amendment activity and the alleged adverse action. A plaintiff must put forth evidence to show that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *Martin*, 977 F.3d at 300. "At the pleading stage, alleging temporal proximity

between protected First Amendment activity and a retaliatory act satisfies the causation element when the official is aware of the First Amendment activity." *Gowen v. Winfield*, 130 F.4th 162, 174 (4th Cir. 2025). "Once a plaintiff establishes his protected conduct was a substantial or motivating factor in the defendant's decision to take adverse action," the burden of proof shifts and the defendant is "tasked with explaining why [his] decision was not animated by retaliatory motives." *Martin*, 977 F.3d at 301.

It is undisputed that on August 1, 2023, Robinson reported a grievance of sexual harassment about Lyons to Investigator Lowe and later made a PREA report against Lyons on the same issue. In so doing, Robinson exercised his constitutional right to register a grievance without retaliation. *Booker*, 855 F.3d at 541. As to the second prong, Robinson alleges that Lyons took two adverse actions against him on August 1, 2023 — Lyons filed the DOR charging Robinson with refusing to work and Lyons requested the inmate's termination from his kitchen job.

The third, causation prong of the analysis is a closer call for Robinson. But considering the evidence in the light most favorable to him, I conclude that disputed material facts preclude summary judgment for Lyons. During the breakfast meal distribution on August 1, 2023, around 6:55 a.m. according to the DOR, Lyons told Robinson to get up off the cart. The DOR reports that Robinson then told Lyons of

his intent to file a PREA report against Lyons.[5]  At 8:10 a.m., once meal service was

completed, Robinson asked Coley to allow him to report to the investigator, Lowe.

Robinson told Lowe and Coley about Lyons' behavior with Fendar days earlier, and

Lowe told him to make a PREA report on Lyons.  Lyons filed the DOR against

Robinson at 8:45 a.m.  Lyons states that when he filed the DOR, he did not know of

Robinson's intent to file a PREA report against him.  Nevertheless, a reasonable jury

could be persuaded by the facts and reasonable inferences drawn therefrom that

Lyons was made aware of Robinson's PREA intentions and his report to Lowe

shortly before Lyons filed a disciplinary charge against Robinson to retaliate against

him for that protected conduct.[6]  *Gowen*, 130 F.4th at 174 (finding causation element

satisfied by evidence of temporal proximity between protected conduct and

---

[5]  In a later submission, Robinson denies making this threat and denies filing a PREA report about Lyons' telling him not to sit during work hours.  Taken as a whole and in the light most favorable to Robinson as the nonmovant, however, the evidence reasonably supports a potential finding that Lyons was aware of Robinson's stated intent to make a PREA report about Lyons.

[6]  Robinson has argued, at the disciplinary hearing and in this lawsuit that Lyons' different treatment of him and other inmates sitting during work hours proves Lyons charged and terminated him to retaliate against him.  While such evidence might be persuasive to a jury considering Lyons' motive, different treatment does not present a freestanding retaliation claim.  *Wilcox v. Lyons*, 970 F.3d 452, 461 (4th Cir. 2020) (finding that "the Equal Protection Clause cannot sustain a pure claim of retaliation").

To the extent that Lyons desires to present a claim of selective enforcement under the Equal Protection Clause, however, he failed to assert any equal protection issue in the Amended Complaint after being directed that it should include all intended claims.  He has also failed to pursue a proper motion to amend this pleading to raise selective enforcement as a claim.  Therefore, I do not consider any such claim to be properly before the court.

retaliatory act and defendant's awareness of protected conduct before that act). Of course, Lyons may be able to persuade the jury at trial that he did not know about Robinson's PREA intentions until after filing the DOR or that he did not charge Robinson to retaliate against him. *Martin*, 977 F.3d at 299 (holding that defendant has burden to prove his "decision was not animated by retaliatory motives"). At present, when Lyons learned of Robinson's intent to report him for sexual harassment and Lyons' motive for filing the DOR are material disputed facts for the jury to resolve. Therefore, I will deny the summary judgment motion as to Robinson's claim that Lyons retaliated against him by bringing the disciplinary charge and by acting to terminate him from his kitchen job.

In support of the awareness factor under *Gowen*, Robinson states his belief that before Lyons wrote the DOR, Coley and Lowe told him that Robinson had reported to Lowe about Lyons' purported sexual harassment and intended to make a PREA report. Robinson also asserts that Coley's body camera footage from between 8:10 a.m. and 8:30 a.m. will show Lowe and Coley making this report to Lyons. Before the disciplinary hearing, Robinson asked for review of Coley's body camera footage to show Robinson's complaint to Coley (around 8:10 a.m.) and Coley taking him to report to Lowe. King declared that this request for the body cam footage, which does not ask for video of a specific time span, was not relevant to Robinson's charge without any further explanation. The clip of body cam video the defendants

have now provided from August 1, 2023, is time stamped as starting at 7:52 a.m. and ending at 8:00 a.m., *before* Robinson told Coley he was in danger.  In preparation for trial, I will direct defendants to allow Robinson to review Coley's body cam footage from between 8:10 a.m. and 8:30 a.m. on August 1, 2023, and to provide a user-friendly version to the court.

I will grant the summary judgment motion as to Robinson's claim that Lyons encouraged or influenced RHU staff to take adverse actions against Robinson. Robinson alleges that staff in RHU occasionally refused him recreation and bathroom access, and in unspecified ways, interfered with his mail, falsified documents, and harassed him with cell searches.  He states no facts gained from his personal knowledge that staff took any of these actions because of anything Lyons did or said to them.  Robinson's merely conclusory assertions that Lyons somehow used RHU staff to retaliate against him are not sufficient to support further development of this retaliation claim.  *Adams*, 40 F.3d at 74-75 (finding that without factual matter in support, conclusory assertions fail to state retaliation claim).  Such speculative assertions are also insufficient to withstand the defendants' summary judgment motion.  *Baber*, 977 F.2d at 874–75.  I will grant the Motion for Summary Judgment as to this portion of Robinson's retaliation claims against Lyons.

D.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Where an inmate asserts procedural due process claims, the court must first consider whether he has asserted a protected liberty interest at stake and, if so, whether he was afforded the minimum procedural protections required by the Fourteenth Amendment before he was deprived of that interest. *Incumaa v. Stirling*, 791 F.3d 517, 526 (4th Cir. 2015).

The first step in any due process challenge is to determine whether the plaintiff has been deprived of a protected liberty interest. *Robinson v. Creasey*, No. 5:07-CV-00347, 2009 WL 1073642, at *3 (S.D. W. Va. Apr. 21, 2009). For prisoners serving a custodial sentence, the interest is in the nature of a liberty interest if its deprivation (1) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) inevitably affects the duration of the inmate's sentence. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Many, if not most, penalties imposed following prison disciplinary hearings do not affect a protected liberty interest, because they do not increase the length of the inmate's sentence and they do not impose significant hardship over and above those already contemplated by the original sentence to prison. *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir.

1991) (noting that prisoners have no liberty interest in variation of daily activities or denial of privileges).

Only if the plaintiff has been deprived of a protected interest does the court get to the second step in the due process analysis — determining if the procedures provided the appropriate due process protection. *Robinson*, 2009 WL 1073642 at *3. In short, if the disciplinary proceedings that Robinson challenges did not impose atypical hardship on him, then he has no federally protected liberty interest, and he was not entitled to federal due process protections during those proceedings. *Sandin*, 515 U.S. at 486–87.

Robinson complains that during the disciplinary proceedings, King wrongfully denied his requests for video footage and other evidence, "lied about camera footage not being available," and "falsified documents" in an unspecified manner. Am. Compl. 9, Dkt. No. 9. He alleges that King and West violated VDOC policy when West adopted King's evidentiary findings instead of making independent determinations. Robinson also complains that West dismissed his retaliation defense because his PREA report had been deemed a non-PREA issue and then found him guilty despite knowing other inmates had also been sitting down in the kitchen.

Robinson's due process claims against King and West fail on the first prong of this analysis, because he fails to identify a protected liberty interest. He does not

allege that the guilty finding on the DOR charge resulted in any increase of his term of confinement.  Rather, the penalty West imposed was merely a fifteen-day loss of telephone and commissary privileges.  Lack of access to such privileges for a short time is an expected circumstance of prison life.  Thus, such penalties do not constitute the type of atypical or significant deprivation that qualifies as a federally protected liberty interest.  Because I find that Robinson has not demonstrated any liberty interest in avoiding the penalty imposed for the disciplinary infraction, the alleged insufficiency of the procedural protections afforded to him during the disciplinary proceedings did not violate any constitutionally protected right.  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460-61 (1989) (holding that if inmate fails to present a protected liberty interest at stake, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight").  Furthermore, it is well established that "a state's failure to abide by its own law as to procedural protections is not a federal due process issue."  *Brown v. Angelone*, 938 F. Supp. 340, 344 (W.D. Va. 1996) (citing *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990)).  For the stated reasons, I conclude that King and West are entitled to summary judgment as a matter of law and will grant the defendants' motion as to Robinson's claims against them.

## III. CONCLUSION.

For the reasons stated, it is hereby **ORDERED** as follows:

1. The Motion for Summary Judgment by defendants Lyons, King, and West, Dkt. No. 33, is GRANTED IN PART AND DENIED IN PART.  The motion is denied as to Robinson's claim that defendant Lyons unlawfully retaliated against him by writing the disciplinary charge and by terminating him from his job, in violation of the First Amendment.  The motion is granted as to all other claims, and the Clerk is directed to terminate King and West as parties to this lawsuit;

2. Defendant Lyons is DIRECTED to certify to the court within 28 days from the entry date of this Opinion and Order that Robinson has been permitted to review Coley's body camera footage from between 8:00 a.m. and 8:30 a.m. on August 1, 2023, or to certify that no such footage exists with an explanation of any efforts made to recover it.  If the footage exists, defendant will provide a user-friendly copy of it to the court; and

3. The Clerk is DIRECTED to set this matter for a jury trial on the sole claim against defendant Lyons that Lyons unlawfully retaliated against plaintiff Robinson by making a disciplinary charge against him and by terminating him from his job, all in violation of the First Amendment to the Constitution.

ENTER:  September 17, 2025

/s/  JAMES P. JONES
Senior United States District Judge