CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
February 27, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
  DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| RA'QUAN ROBINSON, | ) |
| Plaintiff, | ) Case No. 7:24cv00053 |
| v. | ) **MEMORANDUM ORDER** |
| WARDEN DAVID ANDERSON, et al., | ) By: Pamela Meade Sargent |
| | ) United States Magistrate Judge |
| Defendants. | ) |

Plaintiff Ra'Quan Robinson, ("Robinson") a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983. By partial summary judgment, the court has dismissed all claims except Robinson's First Amendment retaliation claim against defendant Correctional Officer M. Lyons, ("Lyons"). Trial on the issue is set for May 14, 2026. This matter is now before the court on Robinson's Motion Requesting an Evidentiary Hearing Regarding Selective Production of Video Evidence, (Docket Item No. 68) ("Motion"), which the court has construed as a Motion for Sanctions based on an alleged spoliation of evidence. (Docket Item Nos. 68, 70). Having considered the parties' arguments and evidentiary materials, the matter is ripe for decision.[1]

## I.    Facts

The court has previously described the factual allegations in this case as follows:

---

[1] The arguments and evidence have been adequately presented in the briefing and evidentiary submissions to the court; therefore, a hearing is not necessary. *See* U.S. DIST. CT. R. W.D. VA., CIV. R. 11(b); FED R. CIV P. 78(b).

Starting in February 2023, Robinson served as an inmate worker in the kitchen at [River North Correctional Center ("RNCC")], where Officer Lyons was also assigned to work. On July 27, 2023, between 10:00 a.m. and noon, Robinson was serving lunch trays to general population inmates on Line 2. Kitchen Supervisor Fendar was standing next to him. Lyons approached [Fendar] from behind and grabbed Fendar "on the butt." Am. Compl. 4, Dkt. No. 9. Feeling uncomfortable with Lyons' action, Robinson backed away. Lyons asked the inmate if he was scared, and Robinson answered, "Yes!" *Id.* Lyons "continued to grab on" Fendar's butt. *Id.* Robinson claims this incident was an "example of the re-occuring" acts of harassment from Lyons. *Id.* Afraid to speak out about the harassment, Robinson tried unsuccessfully to switch shifts to be away from Lyons.

On August 1, 2023, Robinson was distributing breakfast meal trays to general population inmates with the help of Inmate Crewe and Supervisor Martinez. At approximately 6:40 a.m., after serving the inmates from one housing area, Robinson and Crewe sat down while waiting for the inmates from the next housing area to arrive for their meals. Robinson states that such mini breaks are a routine practice when there is no work to be done, and kitchen staff have voiced no objection to such breaks. At about 6:50 a.m., as Robinson sat on the handle of a cart, Lyons came up behind him and kicked the cart. Martinez nodded to Robinson, indicating that Lyons wanted his attention. Martinez told Lyons that Robinson "wasn't doing nothing but buffing the pole." *Id.* at 5. Robinson stood up and told Martinez, "You can't be saying stuff like that around Dude (Lyons) because he will take your words and make some crazy out them." *Id.* Robinson said to Lyons "every time you come around me you saying something Gay or Doing something Gay." *Id.* at 6. Lyons said, "Is you insinuating that I'm Gay?" *Id.* Robinson referenced Lyons' grabbing Fendar's butt the previous week and asked, "What straight man does that?" *Id.* Lyons stated, "I didn't grab on Fendar['s] butt, I had something in my hand sticking it up Fendar['s] butt." *Id.* Robinson said, "Exactly, what straight man does that?" *Id.* "Lyons got angry and started to threaten" Robinson and then walked away. *Id.* Martinez warned Robinson to keep his mouth closed, because Lyons would "get rid of the best workers for lesser." *Id.*

Later that morning, another supervisor told Robinson to be careful, because he was on Lyons' "shit list." *Id.* at 7. At 7:50 a.m., Robinson told Officer Davis that he was in imminent danger and needed to be removed from the kitchen. Davis asked why, Robinson asked to speak to a superior officer about the issue, and Davis refused.

At about 8:10 a.m., after the breakfast service was completed, Robinson left the kitchen, notified Sergeant Coley that he was in imminent danger, and asked to be removed from the kitchen. When Coley questioned how Robinson's life was in danger, the inmate demanded to see an investigator. Coley escorted Robinson to see Intel Officer Lowe. Robinson told Lowe about "the incident that occur[r]ed with" Lyons on July 27, 2023. *Id.* at 8. Lowe authorized Robinson to return to his housing unit so he could report to PREA, referring to a procedure created under the Prison Rape Elimination Act. Coley told Robinson that his kitchen job would be fine, and he could move to another shift to avoid working around Lyons. Lowe and Coley left, and Robinson believed they were returning to the kitchen to inform Lyons about Robinson's "protected conduct." *Id.* at 8. At 9:09, Robinson called PREA about sexual harassment by Lyons, including Lyons' actions with Fendar a week before. Br. Opp'n Summ. J. Mot. Decl. Ex. B, at 5, Dkt. No. 46-2.

On August 1, 2023, at approximately 8:45 a.m., Lyons issued a Disciplinary Offense Report (DOR) charging Robinson with offense code 200, [r]efusing to work. The file time listed on the DOR was "approximately 20 mins [sic] after Sgt. Coley and intel officer Lowe informed Defendant Lyons about Robinson's protected conduct." Am. Compl. 9, Dkt. No. 9. The DOR offense conduct section read:

> At approximately 6:55 a.m. I officer Lyons was making rounds in kitchen when I was walking towards line 2 I noticed Inmate Robinson sitting on the cart handle I officer Lyons then ask Inmate Robinson to get off the cart he stated he was resting. I then observed Inmate Robinson sitting down 2 more times after this. This is not the first time I have spoken to Inmate Robinson about this issue. Inmate Robinson also stated that if I didn't stop harassing him about sitting down he would call PREA on me. Therefor[e] charge is being written per 861.1.

3

Am. Compl. Ex. B1, Dkt. No. 9-2. Coley served the DOR on Robinson at 3:28 p.m. that afternoon. At 3:45 p.m., Robinson "called PREA to report the retaliation." Am. Compl. 9, Dkt. No. 9.

Robinson states that on the morning he made his PREA report, he did not yet know Lyons was writing him a termination slip or a disciplinary charge for sitting down or refusing to work. During the PREA investigation, Fendar made a statement: "I have never had any form of sexual contact with Mr. Lyons and there is no sexual harassment either. Mr. Lyons has slapped my leg in a playful ma[nn]er before but in no way was it sexual." Decl. Ex. E, at 18, Dkt. No. 46-2. The PREA investigators determined that Lyons' alleged conduct did not meet the PREA definition of sexual harassment, so Robinson's complaint was ruled non-PREA.

In preparation for the disciplinary hearing, DHO King reviewed Robinson's requests for evidence. On August 3, 2023, he denied the inmate's requests for video footage and a copy of the PREA report as irrelevant or unavailable. Robinson claims King falsified documents by stating that some requested footage was unavailable; that footage did exist and Robinson was later permitted to view it as part of discovery in this lawsuit. DHO King also ruled as irrelevant a letter Robinson wrote, claiming that Lyons wrote the charge to retaliate against him for reporting to the investigator on August 1, 2023, about Lyons' behavior with Fendar on July 27, 2023.

On August 15, 2023, DHO West conducted the hearing on the disciplinary charge. Before starting the audio recording, West asked Robinson "was he going to take the charge?, because she seen him on camera sitting." Am. Compl. 10, Dkt. No. 9. Robinson said, "No! because I didn't do anything wrong, other inmates was sitting down too, this is clearly retaliation." *Id.* The audio recording indicates that Robinson had a staff advisor, pleaded not guilty, and told West that Lyons had charged him to retaliate against him and treated him differently than other inmates who also sat down at work. Robinson contends that West "talked over" him as he tried to present his defense. *Id.* West deemed Robinson's retaliation argument irrelevant because his PREA report was deemed non-PREA. She found Robinson guilty based on his admission that he had been sitting down at work and

sanctioned him with loss of commissary and telephone privileges for fifteen days. West's findings were upheld on appeal.

On August 17, 2023, Robinson placed himself in the Restricted Housing Unit (RHU) for his own protection, fearing further retaliation. He states that he suffered "mentally from retaliatory tactics that was encourage and influenced by" Lyons. *Id.* at 11. RHU staff, allegedly carrying out retaliation suggested to them by Lyons, refused Robinson recreation, refused him access to a bathroom during recreation (causing him to soil himself), tampered with his mail, and repeatedly shook down his cell. On October 20, 2023, Robinson removed himself from RHU.

The disciplinary charge Lyons wrote made Robinson ineligible for a transfer to a Level 3 prison. During his October 2023 annual review, his request for a transfer was denied. The ineligibility decision was overturned on appeal. When Robinson filed a grievance about Lyons' actions, officials responded that his grievance was resolveable, because an internal investigation of the retaliation allegation was still in progress.

(Docket Item No. 55 at 2–7).

Relevantly, Robinson had requested production of video camera footage for July 27, 2023, and August 1, 2023. (Docket Item No. 20). Robinson reviewed certain video footage on September 26, 2024, as evidenced by an Acknowledgment signed by Robinson and two staff witnesses. (Docket Item No. 46-2, Ex. K). By Minute Order, the court directed the defendants to provide user-friendly copies of video footage and audio recordings to the court that Robinson requested and previously reviewed.[2] (Docket Item No. 53). Additionally, by the court's Opinion

---

[2] The court has received one video file from July 27, 2023, which is surveillance footage of a kitchen area from 10:00 a.m. to 12:00 p.m. Four video files from August 1, 2023, were received: one is surveillance footage of an outdoor recreation area from 8:00 a.m. to 8:24 a.m., the next is surveillance footage of a kitchen area from 5:30 a.m. to 6:45 a.m., the third is surveillance footage of the dining room from 8:00 a.m. to 8:11 a.m., and the last one is body camera footage from an officer from 7:52 a.m. to 8:00 a.m. and

5

and Order entered September 17, 2025, denying, in part, and granting, in part, the defendants' Motion for Summary Judgment, defendant Lyons was directed to certify that Robinson had been permitted to review body camera footage from Officer Coley from between 8:00 a.m. and 8:30 a.m. on August 1, 2023, or to certify that no such footage exists with an explanation of any efforts made to recover it. (Docket Item No. 55 at 19).

In response, Lyons, by counsel, indicated that he had been advised that the requested body camera footage does not exist because Coley's body camera was not turned on during that time. (Docket Item No. 61 at 2). Counsel explained that Virginia Department of Corrections, ("VDOC"), staff members are not required to activate cameras during ordinary interactions with inmates and other staff. (Docket Item No. 61 at 2). Robinson replied to Lyons's response by alleging inconsistencies in whether the camera as off at the time of the event and arguing that, if the footage is not available, then it is because of potential spoliation. (Docket Item No. 65 at 1–2). In support, Robinson attached a Written Complaint form dated August 1, 2023, in which he requested that footage from his interaction with Coley be saved. (Docket Item No. 65-1). The investigator responded to Robinson's request stating that "[a]ll body camera recordings are saved." (Docket Item No. 65-1). Robinson requested that the court order that Lyons produce all body camera activity logs, storage logs, incident reports concerning the event; explain why it was originally stated that the footage existed; and show cause why an adverse-inference instruction or other sanction should not issue for failure to preserve the recording. (Docket Item No. 65 at 2). Lyons then explained that the investigator's response to Robinson's Written Complaint "simply affirms that all existing body camera footage is saved. However,

---

including observation of the line of inmates receiving their trays. Robinson appears briefly at the end of the video and identifies himself, but no further discussion is recorded. An audio recording of Robinson's August 15, 2023, disciplinary hearing was also received.

6

she did not affirm in her response that the specific footage requested by Robinson ever existed in the first instance." (Docket Item No. 67 at 2). Lyons provided a record of Officer Coley's body camera during activated times, none of which included the requested time frame or the alleged conversation between Coley and Robinson. (Docket Item No. 67 at 2-3). Lyons further provided audit logs for Coley's body camera and certain videos from August 1, 2023. (Docket Item No. 67-1). Robinson took issue with Lyons's response and filed another pleading requesting that the court order Lyons to produce body camera assignment logs, post orders for the officer assignment, officer body camera training records, policy acknowledgment forms signed by the officer, supervisory review reports, and any prior discipline for failure to activate cameras. (Docket Item No. 69 at 2).

Simultaneously, Robinson filed the subject Motion. Robinson states that Lyons "fail[ed] to produce the specific kitchen area footage capturing the incident involving the plaintiff," and argues that there is a question of whether the footage existed, whether it was preserved, or whether it was intentionally or negligently withheld or deleted. (Docket Item No. 68 at 2).

In response, Lyons admits that certain timeframes are missing from the video footage provided to Robinson, but he argues that sanctions are not warranted because the footage that is missing was not intentionally deleted or lost; rather, it is missing due to a technical malfunction. (Docket Item No. 71 at 2). In support of this contention, Lyons provides an affidavit of R. Hickman, an investigator at RNCC. (Docket Item No. 71-1). Notably, Hickman states that line officers, including Lyons, do not have access to the facility's video system and cannot alter, delete retrieve, or save surveillance footage. (Docket Item No. 71-1 at ¶ 9). Furthermore, Hickman states that the footage cannot be recovered because any footage not retrieved and saved is overwritten after ninety days. (Docket Item No. 71-1 at ¶ 10). Hickman finally testifies:

7

> I attempted to retrieve and save all video footage from the time period requested by Robinson. Any footage that is missing from the time period he requested was due to a technical malfunction of the surveillance system, and I was not aware at the time that this footage was not preserved. I am not aware, and have no reason to believe, that any portion of this video was intentionally deleted.

(Docket Item No. 71-1 at ¶ 11). Robinson thereafter filed a supporting Declaration, (Docket Item No. 73), along with an additional Request for Production of Documents, (Docket Item No. 72). In the former filing, Robinson reiterates that the kitchen surveillance footage that was provided did not include footage of the correct area of the kitchen, specifically, Line 2, on July 27, 2023, or August 1, 2023. (Docket Item No. 73 at 1-2). In the latter filing he again seeks records related to logged camera activity. (Docket Item No. 72 at 1-2).

## II.    Analysis

Spoliation is "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). Rule 37(e) of the Federal Rules of Civil Procedure controls when sanctions may be imposed for a spoliation claim based on failure to preserve electronically stored information, ("ESI"). *See Monzon v. Hall*, 2023 WL 22027, at *3 (W.D. Va. Jan. 3, 2023). Rule 37(e) provides as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

8

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e).

Under this Rule, the first question is whether the ESI "should have been preserved in the anticipation or conduct of litigation," whether it was "lost because a party failed to take reasonable steps to preserve it," and whether it can be "restored or replaced through additional discovery." FED. R. CIV. P. 37(e). Lyons admits that certain timeframes of video evidence are lost and that they cannot be restored or replaced through additional discovery. Therefore, the question becomes narrowed to whether the video footage should have been preserved in the anticipation or conduct of litigation and whether it was lost because a party failed to take reasonable steps to preserve it.

This question triggers an analysis of the alleged spoliator's duty. The Fourth Circuit has held that "[a] party seeking sanctions based on the spoliation of evidence must establish . . . that the alleged spoliator had a duty to preserve material evidence" and "[t]his duty arises 'not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'" *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013) (quoting *Silvestri*, 271 F.3d at 591).

According to Hickman's Affidavit, Lyons did not have access to the facility's video system in order to play any role in the loss of evidence. However, spoliation

9

by a nonparty may be imputed to a party. *See Sylvestri*, 271 F.3d at 591. Because of their "special relationship," this court has determined that the VDOC's duty to preserve material evidence can be imputed to a correctional officer. *See Johns v. Gwinn*, 503 F. Supp. 3d 452, 462–63 (W. D. Va. 2020). Therefore, the court finds that the duty to preserve the lost video evidence here is imputed to Lyons.

Furthermore, it is evident that Lyons reasonably should have known that the evidence may be relevant to anticipated litigation. As outlined by Hickman's Affidavit, Robinson submitted written complaints in which he requested the preservation of certain video footage. Such written complaints, enclosed with the Affidavit, show that Robinson specifically stated that the video evidence requested "support [his] claims of retaliation and misconduct by C.O. Lyons." (Docket Item No. 71-1, Enclosure. A).

The evidence in the record further shows that some video evidence was properly preserved. However, according to Hickman's Affidavit, while she generally tries to retrieve and save footage from the full timeframe requested, "there is no way of knowing that the whole timeframe has not been preserved except to open the video and manually review it to ensure the entire timeframe is captured." (Docket Item No. 71-1 at ¶ 8). Although she states that "staff [does] not have time to review every video," (Docket Item No. 71-1 at ¶ 8), I find that by failing to review the video footage in its entirety, the footage was lost due to a failure to take reasonable steps to preserve it. *See Johns*, 503 F. Supp. 3d at 468 (explaining that "the duty to preserve is not meant to impose an unreasonable burden on parties anticipating litigation . . . [s]till, a party generally must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents") (internal quotations omitted).

Having determined that the ESI should have been preserved in the anticipation of litigation, it was lost because of a failure to take reasonable steps to preserve it,

and it cannot be restored or replaced through additional discovery, the court must consider whether sanctions are appropriate. *See Johns*, 503 F. Supp. 3d at 470 ("Even after finding that spoliation occurred under Rule 37(e), a court may not impose sanctions remedying the spoliation without first finding that the moving party was actually prejudiced by the spoliation."). In accordance with Rule 37(e), a finding that "the spoliator 'acted with the intent to deprive another party of the information's use in the litigation,'" allows the court to prescribe the more severe sanctions listed under subsection (2); whereas, "only a finding of prejudice is required" for "not-greater-than-necessary sanctions." *Wall v. Rasnick*, 42 F.4th 214, 222 (4th Cir. 2022).

While spoliation can occur when the destruction of evidence in anticipation of litigation is willful, it can also occur when the destruction is the result of inadvertent, albeit negligent, conduct. *See Silvestri*, 271 F.3d at 593. Here, there is no evidence that Lyons acted willfully or intentionally in order to deprive Robinson of information for litigation. Rather, based on the technical malfunction Hickman describes in the Affidavit, the loss of the video footage appears to have been a result of negligence. *See e.g.*, *Doe v. Charlotte Mecklenburg Bd. Of Educ.*, No. 23-1182, 2024 WL 3565522, at *9 (4th Cir. July 29, 2024) (finding that "videos were destroyed as a matter of routine procedure, and the record reveals no more than mere negligence in the failure to preserve the footage," and rejecting the contention that the defendant intended to deprive the plaintiff of use of the video footage in litigation) (applying *Wall*, 42 F.4th at 223).

As explained by the Rule 37(e)(2) 2015 Amendment to the Advisory Committee Note, "[t]he better rule for the negligent or grossly negligent loss of [ESI] is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction." Although the severe sanctions enumerated by Rule 37(e)(2) would not be

11

appropriate here based on the finding that Lyons did not intend to deprive Robinson of evidence, the court must determine if Robinson was nevertheless prejudiced by the loss of evidence such that the prejudice would need to be cured.

"An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance to the litigation." FED. R. CIV. P. 37(e)(1), Advisory Committee Note, 2015 Amendment. While "the moving party 'cannot be expected to demonstrate with certainty the content' of the lost evidence," he must "demonstrate a likelihood that the lost evidence would have been favorable to the moving party's case." *Johns*, 503 F. Supp. 3d at 470 (quoting *E.I. du Pont de Nemours and Co. v. Kolon Indust. Inc.*, 803 F. Supp. 2d 469, 498–99 (E.D. Va. 2011)). Furthermore, "[v]ideo evidence of events can be the 'best and most compelling evidence of what happened.'" *Wall v. Rasnick*, No. 7:17cv00385, 2023 WL 7490862, at *38 (W.D. Va. Nov. 13, 2023) (quoting *Jenkins v. Woody*, No. 3:15cv355, 2017 WL 362475, at *18 (E.D. Va. Jan. 21, 2017).

Here, Robinson states that Lyons "fail[ed] to produce the specific kitchen area footage capturing the incident involving the plaintiff." (Docket Item No. 68 at 2). He further states in his Declaration that the requested footage relevant to his case because it "showed C.O. Lyons grabbing on kitchen supervisor butt on 7/27/2023 and it will also show C.O. Lyons applying unequal treatment and arbitrary enforcement, violating fairness and equal application of institution rules on 8/1/2023, which all amounts to retaliation and misconduct by C.O. Lyons." (Docket Item No. 73 at 4).

Regarding the July 27, 2023, footage, the kitchen area surveillance footage that was provided was, according to Robinson, pointing toward Line 1, rather than Line 2, where he and Lyons would have been present and the alleged sexual harassment and subsequent verbal interaction would have occurred. (Docket Item No. 73 at 2). Regarding the August 1, 2023, footage, it appears that the time frame

12

at issue would be beginning at 6:50 or 6:55 a.m. when Robinson sat on the handle of a cart, Lyons either kicked the cart or asked Robinson to get off the cart, and the two had a verbal exchange regarding Lyons's alleged conduct from July 27, 2023, and Robinson's threat to submit a PREA report. The kitchen area surveillance footage that is available ends at 6:45 a.m., just before this occurrence.

Notably, as Lyons points out in his response brief, surveillance footage does not include audio. (Docket Item No. 71 at 12). Therefore, to the extent that Robinson would rely on the video footage to support his allegations regarding any conversations during these times, he is not prejudiced by the loss of this footage. However, given that the court has already determined that a question of fact exists regarding Lyons's knowledge of Robinson's PREA intentions before filing a disciplinary charge in retaliation, the footage may be relevant to support Robinson's narrative of events for purposes of his retaliation claim. *See United States v. Ferguson*, 140 F.4th 538, 542 (4th Cir. 2025) ("Relevance itself is a low bar, requiring only that evidence make a fact of consequence more or less likely to be true.") (citing Fed. R. Evid. 401). Even so, because the record shows that the parties have different accounts of the events on these two days, the footage could be relevant to show inconsistencies in witness testimony at trial. *See Muhammad v. Mathena*, No. 7:14cv00529, 2016 WL 8116155, at *4 (W.D. Va. Dec. 12, 2016) (finding missing video footage relevant where "video also could have been helpful to jurors in weighing the credibility of witnesses at trial based upon the consistency of their testimony with the events caught on camera").

Therefore, because Robinson is prejudiced by the loss of video footage at least to the extent he can corroborate or contradict testimony, the court may order "measures no greater than necessary to cure the prejudice" under Rule 37(e)(1). Judges in this district have imposed measures to cure prejudice such as this by directing that any reference to the evidence be excluded or fashioning an appropriate

jury instruction. *See e.g.*, *Wall*, 2023 WL 7490862, at *38 (concluding that "the measure necessary to cure the prejudice is to exclude from evidence any reference to the contents of this missing video evidence"); *see also e.g.*, *Muhammad*, 2016 WL 8116155, at *9 (recommending that "the [c]ourt should forbid the [d]efendants from putting on evidence relating to . . . the actual contents of the video itself," and "instruct the jury that a recording of the . . . altercation was made, [the plaintiff] requested that it be preserved, but it was subsequently lost through no fault of [the plaintiff's] and the jurors should not assume that the lack of corroborating objective evidence undermines [the plaintiff's] version of events"). In accordance with Rule 37(e)(1) 2015 Amendment to the Advisory Committee Note, the court must ensure that the remedy granted does not "have the effect of measures that are permitted under subdivision (e)(2)," which is only appropriate upon "a finding of intent to deprive another party of the lost information's use in the litigation." Therefore, by imposing an evidentiary exclusion or jury instruction as described herein, prejudice to Robinson would be limited while avoiding unwarranted adverse inference against Lyons.

### III. Conclusion

Accordingly, it is **ORDERED** that the Motion, is **GRANTED** to the limited extent that the jury be instructed at trial that recordings were made of interactions between the parties on the dates in question, the plaintiff requested that they be preserved, but they were subsequently lost through no fault of the plaintiff and the jury should not assume that the lack of corroborating evidence undermines the plaintiff's version of events.

It is further **ORDERED** that Robinson's most recent request for production of documents, (Docket Item No. 72), is **DENIED**. It appears from the record that the defendant has already produced evidence of certain camera activity logs and

reports.  To the extent that any further documents of that nature exist, the defendant need not produce the same as such documents are not "proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).

    The Clerk is directed to provide a copy of this Order to the parties.

    **ENTERED:** February 26, 2026.

                                                /s/ *Pamela Meade Sargent*
                                                 UNITED STATES MAGISTRATE JUDGE